**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Mitchell Cotton,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>    Defendant. | No. CV-16-2230-PHX DGC<br><br>**ORDER** |

  Plaintiff Paul Mitchell Cotton seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is based on legal error, the Commissioner's decision will be vacated and the matter remanded for further administrative proceedings.

**I. Background.**

  On August 5, 2009, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning December 21, 2008. Plaintiff subsequently amended his claim to a closed period of disability, from September 6, 2008 through June 30, 2010. In March 2012, the ALJ issued an unfavorable decision. In May 2013, the Social Security Administration Appeals Council vacated and remanded. A second hearing occurred on October 17, 2014, where Plaintiff

appeared by video with his attorney and testified before the ALJ. A vocational expert also testified. On January 23, 2015, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.

**II.     Legal Standard.**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

**III.    The ALJ's Five-Step Evaluation Process.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

- 2 -

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled and the inquiry ends.  *Id.*  At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii).  If not, the claimant is not disabled and the inquiry ends.  *Id.*  At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.  § 404.1520(a)(4)(iii).  If so, the claimant is automatically found to be disabled.  *Id.*  If not, the ALJ proceeds to step four.  At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work.  § 404.1520(a)(4)(iv).  If so, the claimant is not disabled and the inquiry ends.  *Id.*  If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience.  § 404.1520(a)(4)(v).  If so, the claimant is not disabled.  *Id.*  If not, the claimant is disabled.  *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2014, and that he has not engaged in substantial gainful activity during the period of September 6, 2008 through June 30, 2010.  At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar degenerative disc disease, hepatitis C, coronary arthrosclerosis status post stent, and history of methamphetamine, crack cocaine, LSD, alcohol, and marijuana use.  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.  At step four, the ALJ found that Plaintiff has the RFC to perform "the full range of medium work as defined in 20 CFR 404.1567(c)."  A.R. 17. The ALJ further found that Plaintiff has no past relevant work.  At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual

functional capacity between September 6, 2008 and June 30, 2010, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

**IV.   Analysis.**

Plaintiff argues the ALJ's decision is defective for four reasons: (1) the ALJ erred in rejecting the assessment of Plaintiff's treating physician, Kyle Norris, M.D., by conflating his assessment with one of a treating physician assistant; (2) the ALJ erred in finding that Plaintiff was "not entirely credible" in the absence of specific, clear, and convincing reasons supported by substantial evidence; (3) the ALJ erred in determining Plaintiff's work capacities without articulated reasons supported by substantial evidence; and (4) the ALJ erred in relying on the medical vocational guidelines in Appendix 2 of the regulations, commonly known as the "grids," to determine that Plaintiff could have performed a significant number of jobs in the national economy.

**A.   Weighing of Medical Source Evidence.**

Plaintiff argues that the ALJ improperly weighed the medical opinions of Dr. Kyle Norris and Mr. Greg Harris, PAC, by conflating the two opinions and failing to even mention the latter by name.

**1.   Legal Standard**

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating

- 4 -

or examining physician can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

A contradicted opinion of a treating or examining physician can be rejected only for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043). An ALJ meets this standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22.

## 2. Kyle Norris, M.D. and Gregory Harris, PAC.

Dr. Norris' medical opinion is not contradicted by any other medical opinion referenced by the ALJ in the opinion. Thus, the ALJ could discount his opinion only for clear and convincing reasons. *Lester*, 81 F.3d at 830. The ALJ could discount the opinion of Mr. Harris by providing "germane reasons" that are "substantiated by the record." *See Molina*, 674 F.3d at 1111.

The ALJ's analysis of the medical opinion evidence is brief and mentions only two opinions: one from Dr. Jane Dill and the other from a "Mr. Norris." A.R. 20. Between December 2008 and January 2009, Dr. Dill examined Plaintiff on four separate occasions in response to his application for workers' compensation. *Id.* Each time, Dr. Dill placed Plaintiff on some level of temporary work restriction, ranging from no activity for two days to not lifting over 15 pounds or push/pull over 30 pounds for a week. *Id.*

According to the ALJ's opinion, "Mr. Norris" provided Plaintiff with four work status assessments between April and June of 2009. The ALJ summarized as follows:

> On April 1, 2009 to April 5, 2009, Mr. Norris completed a workers compensation assessment and opined that the claimant was unable to work. In May 2009, Mr. Norris reported the claimant could return to work on a

> part time basis and could use stairs as tolerated. However, in June 3 and June 18, 2009, Mr. Norris opined the claimant was unable to work. It must be noted that Mr. Norris, as a physician's assistant, is not an "acceptable medical source", and his opinions are considered "other evidence" (20 CFR 404.1513(d)(l) and 416.913(d)(l), and Social Security Ruling 06-03p).

A.R. 20.

The ALJ clearly confused and conflated the opinions of Dr. Kyle Norris and Mr. Gregory Harris, PAC. The record shows that Mr. Harris filled out three of the four work status forms – April 1-5 (A.R. 867), June 3 (A.R. 865), and June 18, 2009 (A.R. 864) – and recommended no work for Plaintiff each time. Dr. Norris completed only the "May 2009" work status form, where he recommended that claimant could return to work for four hours each day and could use the stairs as tolerated. A.R. 386, 866. The ALJ mentions the May 2009 recommendation only as the work of "Mr. Norris," combines it with the three evaluations done by Mr. Harris, and completely ignores the fact that Dr. Norris recommended that Plaintiff be restricted from working more than four hours per day. A.R. 20, 866.

The Commissioner concedes that the ALJ confused Dr. Norris and Mr. Harris. Doc. 11 at 5. The Commissioner argues that the error was not prejudicial, however, because their work status updates "do not establish that Plaintiff was unable to work full-time for at least 12 consecutive months. Therefore, any error in the ALJ's evaluation of these opinions did not likely affect the ALJ's decision that Plaintiff was not disabled." Doc. 11 at 5-6. The Commissioner also argues that "the authors of the work status evaluations did not specifically link their assessment of Plaintiff's ability to perform work activities to their medical findings. . . . Thus, the ALJ reasonably found that the work status updates are contradicted by the provider's records." *Id.* at 6.

The Commissioner's argument is unpersuasive. Even if the Court were to assume that the work status updates from April through June of 2009 do not establish that Plaintiff would have been disabled for a period of 12 consecutive months, or were not

- 6 -

linked to medical findings, the ALJ did not rely on that reasoning in her opinion.  It is well settled that the Court may review the ALJ's decision only on the basis of reasoning provided by the ALJ.  The Court – and the Commissioner – cannot find other reasons to support the ALJ's decision.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (Court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").

Besides confusing Norris and Harris, the ALJ provided these reasons for discounting their opinions:

> Medical reports generated in the context of a workers' compensation claim are adversarial in nature.  The claimant's treating physician in the context of a workers' compensation claim often serves as an advocate for the claimant and describes excessive limitations to enhance the claimant's financial recovery.  In addition, the definition of disability in a workers' compensation case is not the same as a Social Security disability case.  Workers' compensation cases look only at the claimant's ability to return to the job being performed at the time of the injury.  Finally, whether the claimant is "disabled" is a determination reserved to the Commissioner (20 CFR 404.1527(e) and 416.927(e); and SSR 96-5p).  Therefore, the credibility and relevance of the opinions of Dr. Dill and Mr. Norris are limited because of his status as treating sources in the claimant's workers' compensation claim and their contradictory opinion with that of other examining and non-examining physicians of record including their own records and the claimant's reports that only note minimal limitations.

A.R. 20.

Discounting the medical opinions of Dr. Norris and Mr. Harris on the basis of their *assumed* motivations amounts to speculation.  It does not constitute a clear and convincing reason for rejecting Norris or a germane reason for rejecting Harris.  As the Ninth Circuit has explained, "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them[,]" and "[t]he Secretary may not assume

- 7 -

that doctors routinely lie in order to help their patients collect disability benefits." *Lester*, 81 F.3d at 832.[1]

The ALJ also states that the opinions of Dr. Norris and Mr. Harris contradict "other examining and non-examining physicians of record including their own records and the claimant's reports" (A.R. 20), but she fails to provide any citation to these other physicians or their records. Such a general and ambiguous justification falls far short of providing "clear and convincing" reasons for discounting a treating physician's opinion. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006).

The Commissioner argues that any error the ALJ made is ultimately harmless because Plaintiff refused to attend a physical consultative examination scheduled by the Commissioner on November 23, 2009, and "[t]he refusal to attend a consultative examination is grounds to find a claimant not disabled." Doc. 11 at 7; *see* A.R. 18, 82-83, 86, 113, 121-122, 492. But this was not the basis for the ALJ's decision, and the Court therefore may not rely on it. *See Bray*, 554 F.3d at 1225. The ALJ's opinion does mention Plaintiff's missed consultative exam in passing, but she never cited it as a factor for discounting the medical opinions of Dr. Norris and Mr. Harris. *See* A.R. 19, 21. The Ninth Circuit has made clear that the harmless error rule can apply "where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *See Molina*, 674 F.3d at 1115. Here, the ALJ failed to provide any valid reason for discounting the opinions of Dr. Norris and Mr. Harris.

The ALJ committed legal error in discounting the opinions of Dr. Norris and Mr. Harris, and error was not harmless.

---

[1] Plaintiff asserts Dr. Norris was retained to review the workers' compensation claim after Plaintiff filed it, not to make the claim on Plaintiff's behalf. Doc. 10 at 12. Plaintiff provides no cite to the record, but the Court notes that several documents signed by Dr. Norris or Mr. Harris are copied to "Workman's Comp Carrier" (A.R. 382, 385, 387, 389).

- 8 -

**B.     The ALJ Did Not Err in Evaluating Plaintiff's Credibility.**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged, and, if there is no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. The ALJ then found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. The ALJ gave several specific reasons.

First, the ALJ cited a number of favorable medical findings. On December 23, 2008, a magnetic resonance image (MRI) scan showed mild degenerative narrowing at L4-L5. *Id.* at 18. During select examinations, Plaintiff reported no acute distress, normal alignment in the lower extremities, and normal range of motion. In May 2009, Plaintiff reported 75% improvement after a facet injunction. A few months later, Plaintiff again reported a good response to facet injections. In October 2009, Plaintiff stated that he had 80% overall pain relief from facet injections and stopped using his narcotic pain medication. Although other tests showed some concerning results, the ALJ noted that recent medical records from Flagstaff Medical Center reveal no significant musculoskeletal complaints. *Id.* at 19.

Second, the records indicate unfilled prescriptions for pain medication, lapses in treatment, and inconsistent reports.

Third, Plaintiff provided no evidence of weight loss, inability to sleep, or concentration problems due to pain.

Fourth, Plaintiff refused to attend the scheduled physical consultative examination scheduled by the Commissioner on November 23, 2009.

These reasons are specific, and the Court particularly finds the fourth reason to be clear and convincing. Relevant regulations provide that the Commissioner can find a claimant not disabled when the claimant fails to appear for a consultative examination. 20 C.F.R. § 404.1518. The same failure constitutes a clear and convincing reason for disbelieving Plaintiff's claims of serious disability. The Court therefore concludes that the ALJ met the necessary standard in discounting Plaintiff's testimony. *Molina*, 674 F.3d at 1112 ("In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation[,]" including consideration of "inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms.").

To be sure, there are portions of the medical record that support Plaintiff's testimony, including physical examinations showing an antalgic gait, pain with palpation over the lower lumbar spine, and a diagnosis of degenerative disc disease, lumbar displacement, and back pain. Plaintiff also has undergone several procedures for his back, underwent cardiac cauterization on June 23, 2010 for his coronary artery disease, and had significant medication side-effects while undergoing two separate 48-week long interferon treatments for hepatitis C. *Id.* at 18-19. This evidence provides some support for Plaintiff's claims, but "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

The Court finds that the ALJ provided sufficient reasons to justify her credibility assessment of Plaintiff's testimony.

### C. The ALJ's Determination of Plaintiff's RFC.

Plaintiff contends that the ALJ committed legal error by determining Plaintiff's work capacities without articulated reasons supported by substantial evidence in the record. Doc. 10 at 18. Because the Court has determined that the ALJ committed legal error by discounting the medical opinions of Dr. Norris and Mr. Harris, the ALJ's decision will be vacated and remanded. Upon remand, a new RFC determination will be made and the medical opinions of Dr. Norris and Mr. Harris should be afforded proper weight at that time. Thus, the Court need not determine whether the ALJ erred in her determination of Plaintiff's RFC.

### D. The ALJ's Reliance on the Medical-Vocational Guidelines.

In some cases, it is appropriate for the ALJ to rely on the Medical-Vocational Guidelines to determine whether a claimant can perform work that exists in "significant numbers" in the national economy. The Medical-Vocational Guidelines are a matrix system for handling claims that involve substantially uniform levels of impairment. *See* 20 C.F.R. pt. 404, subpt. P, app 2. The Guidelines present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. These tables are commonly known as "the grids." The grids are matrices of the "four factors identified by Congress – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983).

When an impairment, such as pain, only affects the claimants ability to perform the nonexertional aspects of work-related activities, "the rules in appendix 2 do not direct factual conclusions of disabled or not disabled." 20 C.F.R. § 404.1569a (c)(2). Stated differently, "[a] non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a

- 11 -

case, the guidelines would be inapplicable." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).[2]

"The Commissioner's need for efficiency justifies use of the grids at step five where they *completely and accurately* represent a claimant's limitations." *Id.* at 1102 (emphasis in original). "The fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Id.* "[A] vocational expert is required only when there are significant and sufficiently severe non-exertional limitations not accounted for in the grid." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

Plaintiff alleges that the ALJ's reliance on the grids was inappropriate because Plaintiff "suffered nonexertional impairments sufficiently severe as to impact his ability to work," including "pain and associated limitations related to his orthopedic impairments." Doc. 10 at 22. The Commissioner argues that Plaintiff has failed to demonstrate prejudicial error because Plaintiff has not identified evidence establishing a nonexertional limitation that the ALJ erroneously disregarded. Doc. 11 at 12.

As discussed above, the Court has found legal error elsewhere in the ALJ's decision, and will remand for further proceedings. Thus, like the determination of Plaintiff's RFC, this issue will necessarily be revisited. The Court notes that the ALJ failed to include *any discussion* of Plaintiff's nonexertional limitations in her step five

---

[2] Nonexertional limitations are defined in 20 C.F.R. § 404.1569a (c), and include "limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the demands of jobs other than the strength demands[.]" Examples of nonexertional limitations include having difficulty with the following areas: functioning because of nerves, anxiety, or depression; concentrating; understanding or remembering detailed instructions; seeing or hearing; tolerating some physical feature of certain work settings, such as dust or fumes; or performing a postural function such as reaching, handling, stooping, climbing, crawling, or crouching. 20 C.F.R. § 404.1569a (c) (i)-(vi).

analysis. *See* A.R. 21-22. On remand, prior to relying on the grids in step five, the ALJ must provide analysis of why Plaintiff's nonexertional limitations do not preclude their use. *See Tackett*, 180 F.3d at 1102.

### E.     Remand.

Where an ALJ fails to provide adequate reasons for rejecting the opinion of a physician, the Court must credit that opinion as true. *Lester*, 81 F.3d at 834. An action should be remanded for an immediate award of benefits when the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007), *Orn*, 495 F.3d at 640, *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004), and *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). There is "flexibility" which allows "courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1020.

The first two factors are satisfied. Further development of the medical record is impossible because Plaintiff alleges a closed date of disability. And in her decision, the ALJ failed to provide legally sufficient reasons for rejecting the treating opinions of Dr. Norris and Mr. Harris. The third factor is a close call. The only improperly discredited evidence was the medical opinions of Dr. Norris and Mr. Harris, and even when those opinions are credited as true, they do not appear to establish that Plaintiff was unable to work full-time for at least 12 consecutive months.

Even if all three factors are satisfied, there is substantial reason in the record to doubt Plaintiff was disabled. For example, as just mentioned, it is unclear whether Plaintiff was unable to work full-time for at least 12 consecutive months. Additionally, Mr. Harris recommended that Plaintiff complete a functional capacity evaluation with a physical therapy group, but Plaintiff seems to have never followed through as the record contains no such evaluation. A.R. 838. What is more, Plaintiff refused to attend a consultative examination, which is sufficient reason alone to find that a claimant is not disabled. 20 C.F.R. § 404.1518. These facts were not relied on by the ALJ in her decision, and thus the Court may not rely on them now to uphold the ALJ's decision. *See Bray*, 554 F.3d at 1225. But when considering the record as a whole, these facts "create serious doubt that [Plaintiff was], in fact, disabled" during the time period alleged. *Garrison*, 759 F.3d at 1020. Accordingly, the Court will exercise its discretion to remand for further proceedings.

**IV.  Conclusion.**

The ALJ committed legal error by discounting the medical opinion of Dr. Norris without providing clear and convincing reasons for doing so. The ALJ also committed legal error by discounting the opinion of Mr. Harris without providing germane reasons for doing so. The error was not harmless. The Court will vacate the ALJ's decision and remand.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for further proceedings consistent with this opinion.  The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 7th day of March, 2017.

_____
David G. Campbell
United States District Judge